UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Yvonne Quintero, et al. v. Ford Motor Company, et al.* CV 18-01912 AB (FFMx) | Case No. 18-ML-02814 AB (FFMx)<br><br>Case No. CV 18-01912 AB (FFMx)<br><br>**ORDER GRANTING FORD'S MOTION FOR JUDGMENT AS A MATTER OF LAW [Dkt. No. 794] AND DENYING AS MOOT FORD'S MOTION FOR A NEW TRIAL [Dkt. No. 795]** |

Before the Court are Defendant Ford Motor Company's ("Ford") Motion for Judgment as a Matter of Law ("JMOL," Dkt. No. 794) and Motion for a New Trial (Dkt. No. 795).[1] Plaintiffs Yvonne and Salvador Quintero ("Plaintiffs") filed oppositions and Ford filed replies. The Court heard oral argument on July 8, 2020. For the following reasons, the Motion for Judgment as a Matter of Law is **GRANTED** and the Motion for a New Trial is **DENIED AS MOOT**.

## I.   BACKGROUND

This Order assumes familiarity with the background of this case, so the Court will provide only a brief summary.

---

[1] The Motions were filed in the MDL, so the docket numbers refer to the MDL docket, unless otherwise noted.

1.

This is one of more than 1,000 member cases of the multidistrict litigation *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liability Litig.*, Case No. 18-ML-02814, concerning allegedly defective DPS6 dual-clutch powershift transmissions installed in certain Ford vehicles. This case was the second case in the MDL to go to trial: it went to the jury on Plaintiffs' claim under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790-1795.5 ("Song-Beverly" or "Act") for breach of the express warranty, along with certain questions relating to breach of the implied warranty, and Plaintiffs' request for a civil penalty under the Act. The jury found for Plaintiffs, and awarded them $7,718.61 in stipulated damages under the express warranty claim, and a two-times civil penalty of $15,437.20 based on its finding that Ford willfully failed to replace Plaintiffs' vehicle or reimburse their lease payments. Plaintiffs later abandoned the implied warranty claim.

Ford now moves for judgment as a matter of law. First, Ford argues that Plaintiffs failed to present substantial evidence that Ford failed to repair their vehicle after a reasonable number of opportunities. Second, with respect to the jury's civil penalty finding, Ford argues that Plaintiffs failed to present admissible evidence that Ford *willfully* refused to comply with its obligations. Ford also moves for a new trial on numerous substantial grounds, but because the Court is granting the motion for judgment as a matter of law, the motion for a new trial will be denied as moot.

**II.    LEGAL STANDARD**

"Judgment as a matter of law [under Federal Rule of Civil Procedure ("Rule") 50] is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938–39 (9th Cir. 1999).  When analyzing a motion for judgment as a matter of law, a court "must view the evidence in the light most favorable to the non-moving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000)). The court may not "assess the credibility of witnesses . . . ." *Bell v. Clackamas*

*Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003). The court also may not "substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *see also Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) (noting the court's job "is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict").

Nevertheless, to withstand a motion for judgment as a matter of law, a party's claims must be supported by "substantial evidence." *Janich Bros. v. Am. Distilling Co.*, 570 F.2d 848, 853 (9th Cir. 1977). "Substantial evidence" is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). Further, an opposing party's evidence must be admissible, because "[i]nadmissible evidence contributes nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley*, 528 U.S. 440, 454 (2000) (citation omitted) (judgment as a matter of law proper where expert testimony should have been excluded under *Daubert*).

## III. DISCUSSION

The gravamen of Ford's argument is that Plaintiffs did not present admissible evidence sufficient to establish that Ford failed to repair or replace their vehicle after a reasonable number of repair opportunities. Having presided over the trial, and upon consideration of the parties' memoranda and supporting materials, the Court agrees.

The Song-Beverly Act provides protections for consumers who have purchased products covered by an express warranty. *Martinez v. Kia Motors America, Inc.*, 193 Cal.App.4th 187, 191 (2011). As relevant here, the statute provides that "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer . . ." Cal. Civ. Code § 1793.2. The Act's

3.

reference to "a reasonable number of repair attempts" in plural requires a plaintiff to provide the manufacturer *more than one attempt* to repair the product to a confirming state. *See e.g.*, *Silvo v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208-09 ("the statute does not require a manufacturer to make restitution or replace a motor vehicle if it has had only one opportunity to repair the vehicle"). Thus, to establish a Song-Beverly express warranty claim, a plaintiff must submit evidence that they presented their vehicle to the manufacturer to repair the nonconformity at least twice, and that the manufacturer's repair efforts failed, that is, that the nonconformity persisted after a minimum of two repair presentations.

Here, Plaintiffs presented evidence of potentially three visits to Ford dealerships concerning a nonconformity of their vehicle. However, only one of these visits properly counts as a repair opportunity: this is the August 1, 2015 visit to the Puente Hills Ford dealership, and it is documented in repair orders. There is no dispute that this visit and the evidence surrounding it is sufficient to establish one failed repair attempt. However, the parties dispute whether the remaining two potential repair opportunities are sufficient, so the Court turns to consider them,

**A. The Evidence Was Insufficient to Establish that the May 2017 Visit to Bob Wondries Ford Was a Failed Repair Opportunity.**

There is another documented service visit, on or about May 24, 2017, when Salvador Quintero ("Mr. Quintero") took the vehicle to Bob Wondries Ford. This visit occurred about a month before Plaintiffs' lease was up. The Court need not address Ford's arguments that this visit was not for the same nonconformity as the August 1, 2015 visit, and that Plaintiffs' motive for bringing the vehicle in for service disqualifies this as a repair opportunity, because the May 2017 visit cannot count as a failed repair opportunity for another reason: Plaintiffs did not present evidence establishing that the work done on the vehicle during this visit failed to bring the vehicle into conformity with the express warranty. The invoice for this visit documents that the Plaintiffs "STATE[] TRANSMISSI[O]N SEEMS TO SHUDDER

SPUDDER AND MAKING NOISE WHEN SHIFTING FOR[W]ARD OR REVERSE." *See* Chang Decl. Ex. C (Dkt. No. 794-5) pp. 17-20 (copies of the invoice, the last bearing the signature "S.B. Quintero"). It also reflects that the dealership conducted "EEC TESTS FOUND NO CODES. REPROGRAM PCM TCM. NO LEAKS PRESENT AT [T]HIS TIME. ROAD TEST VEHICLE WITHIN EXPECTED LIMITS." *Id.* So this visit involved a complaint about the transmission, some diagnostic tests, and repairs (reprograming the PCM and TCM). But Plaintiffs point to no testimony or other evidence about how the vehicle functioned after this visit. In order to show that the repair opportunity failed, Plaintiffs had to show that the vehicle still evinced the same problems after the visit. No such testimony was elicited in this case. Plaintiffs argue that the repairs were "worthless," *see* Opp'n 4:9-12, implying that the nonconformities persisted. But this is simply Plaintiffs' theory and argument of counsel, neither of which is a substitute for actual evidence. There was simply a failure of proof at trial that the May 2017 repair opportunity failed, so it does not count as a failed repair opportunity.

**B. The Evidence Regarding An Undocumented Visit to Bob Wondries Ford Is Insufficient to Establish a Failed Repair Opportunity.**

There was also testimony from Mr. Quintero about a repair opportunity at Bob Wondries Ford that was not documented.[2] Each party filed incomplete transcript excerpts of this key testimony, but the entirety of Mr. Quintero's testimony about this visit is set forth in the December 12, 2019 trial transcript (*Quintero* Dkt. No. 54),

---

[2] Plaintiffs' expert Mr. Micale also vaguely referred to a repair opportunity that was not disclosed and not included in his report. This appears to be the same repair opportunity that Mr. Quintero testified about, because Micale stated that he learned of this repair attempt from Mr. Quintero during the trial, and he indicated Mr. Quintero would testify about it. And, Plaintiffs do not argue that Micale and Mr. Quintero were referring to two different repair opportunities. The Court therefore infers that the undisclosed repair opportunity that Micale and Mr. Quintero were referring to was the same one. But for the record, Micale's reference to this repair opportunity was inadmissible hearsay and far too insubstantial to support any verdict.

740:1-749:7 (direct examination), 757:21-759:23 (cross examination). This testimony is not sufficient to establish a failed repair opportunity for two reasons.

First, Plaintiffs failed to disclose this repair opportunity during discovery, and instead disclosed it for the first time during trial. In their opposition, Plaintiffs do not deny that they failed to disclose this purported repair during discovery, thus conceding this point. The Court admitted this testimony, which was error. "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008)). Here, Plaintiffs' failure to disclose this purported repair attempt in discovery was neither substantially justified nor harmless; to the contrary, this was key evidence and failing to disclose it prejudiced Ford by depriving them of the opportunity to investigate it. This evidence should have been excluded. Because this evidence should have been excluded, it "contributes nothing to a 'legally sufficient evidentiary basis' " for the verdict. *Weisgram*, 528 U.S. at 441-42 The Court must therefore disregard it.

Mr. Quintero's testimony about this undocumented visit to Bob Wondries is insufficient for another reason: it was too vague, speculative, and contradictory to constitute "substantial evidence." Briefly, Mr. Quintero testified on direct examination that, at some time between the other two visits (August 1, 2015 and May 24, 2017), he brought the vehicle to Bob Wondries Ford complaining that it is "not performing the proper way," but the service person told him that "it was normal for this type of car. These Focuses run that way with the -- with the manual and automatic transmission," and that she told him there was nothing they can do and told him to go home. *See* 12/12/19 Transcript at 748:2-23. On cross examination, Mr. Quintero testified that he went to Bob Wondries *only once* for a transmission issue and that the other time was for a battery. *Id.* 758:16-759:23. The invoices reflect that Mr. Quintero took the vehicle to Bob Wondries for the May 24, 2017 visit. Given that Mr. Quintero said he visited Wondries Ford only once for a transmission complaint, and that Mr. Quintero

6.

took the vehicle to Wondries for the May 24, 2017 transmission visit, this contradicts Mr. Quintero's testimony about the undocumented visit or, at best, renders it too speculative and vague to constitute substantial evidence. Plaintiffs' opposition does not acknowledge, let along attempt to clarify, the inconsistencies and vagueness; it simply disregards the confounding testimony elicited on cross-examination, in effect waiving Plaintiffs' opportunity to respond to this issue directly. Mr. Quintero also stated that he couldn't remember the timing of this undocumented visit—a fact that would be important to adequately assess whether there were a reasonable number of repair opportunities, or to assess Ford's willfulness.

Thus, because the undocumented repair opportunity was not disclosed before trial and should have been excluded, and because Mr. Quintero's testimony about it is contradictory, vague, and speculative, the Court concludes that there was no legally sufficient evidentiary basis to find that the purported undocumented visit to Bob Wondries Ford constituted a failed repair opportunity.

Because the August 1, 2015 visit to Puente Hills Ford was the only failed repair attempt for which a legally sufficient evidentiary basis was presented at trial, Plaintiffs failed to present sufficient evidence of more than one failed repair opportunity, as required to sustain their claim under the Song-Beverly Act, and the civil penalty deriving therefrom. Ford is therefore entitled to judgment as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ford's Motion for Judgment as a Matter of Law. The Judgment on Jury Verdict (*Quintero* Dkt. No. 62) is **VACATED**. A new separate Judgment will be entered concurrently with this Order. The Court **DENIES AS MOOT** Ford's Motion for a New Trial.

**IT IS SO ORDERED.**

Dated: August 13, 2020                    _____
                                          HONORABLE ANDRÉ BIROTTE JR.
                                          UNITED STATES DISTRICT COURT JUDGE